## HENRY HAMBURG v. O. P. WOOD & CO.

(Case No. 5726.)

1. TRIAL OF RIGHT OF PROPERTY—POSSESSION—The statute regulating the proceeding for the trial of the right of property contemplates actual seizure of the subject of the levy. Although the levy be upon an undivided interest, yet if the defendant in the writ be entitled to such possession, the officer may take possession of the whole of the levy. The burden of proof at the trial is determined by ascertaining from whom the officer took possession.

2. SAME—UNDIVIDED INTEREST—SEIZURE—By seizing the whole under a levy upon an undivided interest, the officer affirms that possession of the whole is an incident of the right to that levied on ; and a claimant, under the statutes, of that levied on, acquiesces in that affirmation. For all the purposes of the proceeding instituted by the claim, the interest in controversy is the whole subject matter. (Authorities discussed.)

3. SAME—CO-OWNERS—In case the owner of the interest not levied on disputes the right of the officer to possession of the whole property, he may claim or sue for damages. If the whole of the property be levied upon, the several co-owners thereof might be compelled to act in concert in asserting their rights ; but in case of levy upon an undivided interest, the owner thereof may maintain his right, independent of his co-owners.

4. SAME—AFFIDAVIT—The affidavit of a claimant of an undivided interest in property seized did not state that the interest claimed was that levied on, nor that the interest in the property not claimed was not owned by the defendant in the writ. *Held,* The sheriff might have refused to deliver the property to the claimant; in doing so he assumed responsibility for the fact that the interest claimed and that levied on were identical. But the affidavit was not a pleading. It could not affect the issues required to be made up between the plaintiff and the claimant.

5. SAME—STATUTE CONSTRUED—The owner of an undivided interest levied upon in property seized, may claim under the statute regulating the proceeding for the trial of the right of property, and the owner of the other interest, not being a party to the writ, need not be made a party to the proceeding. The affidavit of the claimant is sufficient to institute the trial of the right of property, when accepted by the sheriff, if in fact the interest claimed is the interest levied upon, though their identity be not stated in the affidavit.

6. PRACTICE—PURCHASE—An allegation that a party bought certain property at a given price, and paid the consideration agreed upon, may be proved by evidence of payment by a credit upon a counter demand. But an allegation of payment may not be supported by proof of a set-off, nor an allegation of payment in money, by proof of payment in property.

7. SAME—ACCOUNT—Where the purpose is to prove an indebtedness as a means of proving a purchase, it is not necessary to aver all the items of an account in order to introduce it as evidence of indebtedness.

8. SAME—CHARGES—The plaintiff presented a number of special charges, asking that they be given. A portion of one paragraph was proper to be given. *Held,* Being inseparably connected with other matter not proper to be given, it was not error to refuse that paragraph as a whole.

9. EVIDENCE—MOTIVE—Where the motive of the witness in the doing of an act involves a legal conclusion, his statement of that motive is incompetent evidence. But where the motive of the witness is not opinion or legal conclusion, but knowledge, it is admissible. The fact that such evidence is not attended by some of the assurances of truth, affects its weight, but not its competence.

10. SAME—FRAUDULENT SALE—It is the general rule that declarations of the grantor after sale are not admissible to impeach the title of the grantee. But the exception to the rule is well established that such declarations are admissible when a *prima facie* case of combination or conspiracy has been made by the evidence.

11. SAME—PRIMA FACIE CASE—Possession by the vendor after sale is *prima facie* evidence of fraud ; and, in case it be unexplained, it is error to refuse a charge to that effect, and that the burden of proof is shifted thereby to the party asserting the validity of the transaction. The sufficiency of the explanation offered by that party is to be determined by the jury.

12. SAME—DECLARATIONS OF VENDOR—Under the *prima facie* case established, the declarations of the vendor, while in possession after sale, are competent evidence. They are admissible, according to the weight of authority, as proof of the *res gestae;* they are also admissible against the vendee for the purpose of proving fraud in the sale. A claim by both vendor and vendee that the former's possession is as the latter's agent, does not render the testimony inadmissible.

APPEAL from Wheeler.    Tried below before the Hon. Frank Willis.

This was an action for the trial of the right of property. On May 16, 1884, the appellant instituted suit for the recovery of $685.95 due him by James M. Sands, at the same time procuring a writ of attachment which, May 19, 1884, was levied upon an undivided half interest in certain personal property, the other half being owned by the Dickerson Bros., and upon certain other personal property, all in the possession of Sands. On May 26, 1884, O. P. Wood & Co. perfected claims for trial of the right to the property seized under both levies, and the property was delivered to them by the sheriff. On November 10, 1884, claimants, under direction of the court, submitted that they claimed the property levied on by a bill of transfer from Sands, executed April 28, 1884; that they purchased the property from Sands on that date, paying him a valuable consideration in good faith; that they were the owners of the property at the time of the seizure. The plaintiff submitted an exception to the claimant's affidavit of claim, because of a non-joinder of other co-tenants; a general denial, and plead specially that Sands was, before and at the time of the seizure, in possession of all the property levied on; that he was the sole owner of a portion of the levy, and the owner of an undivided half interest in the remainder, the other half interest being the property of W. W. and J. L. Dickerson; that at the time of the alleged sale by Sands to Wood & Co., they had notice of his insolvency and intention to hinder and defraud certain of his creditors. On November 14, 1884, the court overruled the exception to the affidavit of claim, and the trial of the case on its merits resulted in a failure to agree by the jury, and the

case was continued.  At the succeeding term, plaintiff amended his pleading by presenting as a plea in abatement, under oath, the issue of the misjoinder of parties by the claimant.  The claimant's exception to that plea was sustained, and the trial of the case resulted in a judgment for claimants, O. P. Wood & Co.  The seventh paragraph of the special instruction asked by the plaintiff was as follows:  "Fraud is never presumed, but must, when relied upon, be proved, and it, like any other fact, may be established by circumstantial evidence.  The jury are authorized to consider all the circumstances in evidence to determine whether or not fraud really existed in the transfer of the property from Sands to Wood & Co., and if it was the intention of Sands, at the time of the sale, to hinder, delay or defraud his creditors in the collection of their debts, and that Wood & Co. knew of such intent of Sands, or were in possession of such facts as should have put them upon inquiry as to such intention of Sands, and that they could have ascertained the same by the use of ordinary diligence, then, and in that case, the sale would be fraudulent in law, notwithstanding Wood & Co. may have paid Sands a valuable consideration for the property, and were not prompted by any fraudulent motives on their part, and you will find for the plaintiff."

*J. N. Browning*, for appellant, on joinder of parties, cited:  Flint *v.* McCarty, W. & W. Con. Rep., sec., 1018; Gillian *v.* Henderson, 12 Tex., 47; May *v.* Slade, 24 Tex., 205; Stachely *v.* Pierce, 28 Tex., 328; Railway Company *v.* Hollingsworth, 2 Wills. Con. Ct. App. Rep., sec. 173; Railway Company *v.* Gill, *Id.* sec. 175; Railway Company *v.* Williams, W. & W. Con. Rep., sec. 249; Schley *v.* Hale, *Id.*, secs. 931, 932; Hart *v.* Fitzgerald, 2 Mass., 509; s. c., 3 Am. Dec., 75; Kimball *v.* Thompson, 4 Cush., 441; s. c., 50 Am. Dec., 799; Tripp *v.* Riley, 15 Barb., 333; Newton *v.* Howe, 29 Wis., 531; s. c., 9 Am. Rep., 616; 4 Kent's Com., 368; Rules Dist. Ct., 12, 13, 14, 15; Able *v.* Bloomfield, 6 Tex., 263.

On the other points discussed in the opinion, he cited:  Able *v.* Lee, 6 Tex., 427; Holliman *v.* Rogers, *Id.*, 91, 95; Yale *v.* Ward, 30 Tex., 18; Gillies *v.* Wofford, 26 Tex., 76; Malone *v.* Craig, 22 Tex., 609; Sayles' Pl., sec., 7; Mims *v.* Mitchell, 1 Tex., 453; R. S., art. 1266; Miller *v.* Jannett, 63 Tex., 82; Cleveland *v.* Duggan, 2 Wilson's Cond. Rep., 84; Carleton *v.* Baldwin, 27 Tex., 572; 1 Greenl. on Ev., note 2, sec. 190; Adams *v.* Davidson, 10 N. Y. Ct. App., 309; Cuyler *v.* McCartney, 33 Barb., 165; 1 Rawle, 362; s. c. 18 Am. Dec. 638; R. S., art. 2465; Moseley *v.* Gainer, 10 Tex., 393; Traylor *v.* Townsend, 61

Tex., 144; Edrington *v.* Rodgers, 15 Tex., 188; Humphries *v.* Freeman, 22 Tex., 45; Mills *v.* Howeth, 19 Tex., 257; Cox *v.* Miller, 54 Tex., 16; Bryant *v.* Kelton, 1 Tex., 415; Garahy *v.* Bayley, 25 Tex. Sup., 294; McKinnon *v.* Reliance Lumber Co., 63 Tex., 30; Smithwick *v.* Andrews, 24 Tex., 488; Railway Company *v.* Terry, 42 Tex., 451; Markham *v.* Carothers, 47 Tex., 22; Love *v.* Wyatt, 19 Tex., 312; Austin *v.* Talk, 26 Tex., 127; Andrews *v.* Marshall, 26 Tex., 212; Sparks *v.* Dawson, 47 Tex., 138; Weaver *v.* Ashcroft, 50 Tex., 427; Gibson *v.* Hill, 21 Tex., 225; Howerton *v.* Holt, 23 Tex., 52; Stadtler *v.* Wood, 24 Tex., 622; Van Hook *v.* Walton, 28 Tex. 59.

*Grigsby & Houston, W. H. Woodman* and *Walton, Hill & Walton,* for appellees, cited : R. S., 1291, 4822; Preveler *v.* Preveler, 54 Tex., 53; McKellar *v.* Lamkin, 22 Tex., 244; Sayles & Bassett on Pl., 611; Holstein *v.* Gardner, 16 Tex., 115; Robertson *v.* Ephriam, 18 Tex., 122; Wells *v.* Fairbank, 5 Tex., 582; 3 Washburn on Real Prop., 369, 370, 371, 373, 375, 376; Big. on Estop., 319; 2 Washburn on Real Prop., 437; Turner *v.* Lambeth, 2 Tex., 369 ; Tompkins *v.* Bennett, 3 Tex., 47 ; Giddings *v.* Steel, 28 Tex., 757; Hortan *v.* Reynolds, 8 Tex., 288; Mason *v.* Kleberg, 4 Tex., 86; Thompson *v.* Herring, 27 Tex., 285; Grooms *v.* Rust, 27 Tex., 234; Garahy *v.* Bayley, 25 Tex. Sup., 294: Garahy *v.* Green, 32 Tex., 202; Reed *v.* Herring, 37 Tex., 160; Greenleve, Block & Co. *v.* Blum, 59 Tex., 126; L. A. & W. O. Ellis *v.* A. S. Valentine et al., 65 Tex., 532; Gus Lewy & Co. *v.* Joseph Fischl, 65 Tex., 311; 16 Wend., 460.

ROBERTSON, ASSOCIATE JUSTICE.—The appellant urges that our statute for the trial of the right of property does not authorize a claim of an undivided interest in personalty. Several provisions of the statute make it clear that the proceeding contemplated was only intended for cases in which the officer actually seized the subject of the levy. Without having possession, the sheriff could not deliver the property to the claimant. The claimant could never fulfill that alternative in the condition of his bond authorizing a return of the property if the claim is not sustained. The burden of proof is determined by ascertaining from whom the officer takes the possession of the property. But when a levy is made upon an undivided interest, the sheriff may take possession of the whole, if the defendant in the writ is entitled to such possession. R. S., arts. 2292, 2313.

The provision of the statute for the trial of the right of property is that claim may be made by any person not a party to the writ when personal property is levied upon. In this case the sheriff, by virtue

of levy upon a half interest, seized the whole. His act affirms that the possession of the whole is an incident of the right to the half levied upon. Any one claiming that half under the statute, acquiesces in the sheriff's theory that the half seized, and claimed, entitles the owner to the possession of the whole. The claimant admits the sheriff's right to the possession under his levy, if the interest levied upon is subject to the writ. The sheriff admits that the claimant is entitled to the possession if he is the owner of the interest levied upon. As between them, the right of possession is determined by an adjudication of the title to the one-half in controversy between them, without any reference to the ownership of the other half. The plaintiff in the writ succeeds, when the contest with the claimant is inaugurated, to the sheriff's position. For all the purposes of the proceeding instituted by the claim, the half interest in controversy is the whole subject matter.

The half interest not levied upon was not claimed by the plaintiff to be subject to the writ. The claim of the half interest levied upon was a denial of any right subject to levy in the defendant in the writ. Under a claim of the very interest levied upon, the issue is presented by the claimant that the defendant in the writ has no interest whatever in the property seized. He shows this as clearly by claiming that interest siezed, as if he asserted that the interest not claimed belonged to some person not a party to the suit.

It is held in Alabama, under a similar statute to ours, that under a claim of the whole chattel levied upon, proof of the ownership by the claimant of one-half and of the ownership of the other half by one not a party to the writ, entitled the claimant to judgment. McGrew v. Hart, 1 Porter, 175; Cotten v. Thompson, 21 Ala., 574. In those cases the whole was levied upon, and the decisions could proceed only upon the theory that, under the statute, the owner of any interest in a chattel in which the defendant in the writ has no interest may claim. In McGrew v. Hart, the opinion was delivered by Chief Justice Lipscomb, and it is not improbable that our statute was modeled upon that of Alabama. We have not access here to a copy of the original act of 1828 of that state, but its provisions, as indicated by the early decisions made under it, seem to be the same as those contained in the code of 1876, Towns & O'Brien v. Alford & Butler, 2 Ala., 378, and substantially the same as the Texas law. Before this remedy had been incorporated in our jurisprudence, the statute creating it in Alabama had received the construction announced in McGrew v. Hart,

The defect in the common law, remedied in Texas and Alabama by

the provision for the trial of right of property, is cured in other states by the action of replevin. In that action the claimant is plaintiff; he sues for the property, and to maintain his suit must establish such title and make such parties as will entitle him to recover the property in other actions. As a part owner cannot generally recover a chattel, wrongfully withheld, he cannot, except under special circumstances, maintain replevin without making his co-owner a party. Hart *v.* Fitzgerald, 2 Mass., 510; Tripp *v.* Riley, 15 Barb., 333.

On the other hand, in the trial of the right of property, the plaintiff in the writ is the plaintiff in the suit instituted by the claim. He holds the affirmative of the issue to be tried, whether the property levied upon is subject to the writ. The claimant is the defendant in the suit, and may, without proving any interest in the thing seized, defeat the levy by showing that the writ is void. Meader Co. *v.* Aringdale, 58 Tex., 447; Pace *v.* Lee, 49 Ala., 575; Ellis *v.* Martin, 60 Ala., 398; Jackson *v.* Bain, 74 Ala., 328; 72 Ala., 239.

By a special provision of our law, the plaintiff makes a *prima facie* case by proof that the possession was not with the claimant at the time of the levy. To rebut the case thus made out, the claimant must show that the property is not subject to the writ, and that he has such interest in the property as authorizes him to retain and defend the possession acquired from the officer. This interest, it is held in Alabama, must be such as to entitle him to maintain trespass, trover or detinue. Lehman *v.* Warren, 53 Ala., 535; Shahan *v.* Herzberg, 73 Ala., 57; Pollack *v.* Graves, 72 Ala., 347; Treadway *v.* Treadway, 56 Ala., 390; Boswell *v.* Carlisle, 55 Ala., 554; Irons *v.* Reynolds, 28 Ala., 305.

In all these cases, however, the character of the claimant's title, and not the quantity of his interest, was in discussion. The interest would have been held sufficient, probably, if the quality of the title had been unexceptionable.

Dickerson Bros. were in no way concerned with the issue in this suit. If they disputed the proposition on which the sheriff proceeded in his levy, that the owner of the Sands interest was entitled to the possession, they were not required to test the question by claim, but could sue for damages. They had as much right to choose their remedy as did Wood & Co. By claiming, Wood & Co. only surrendered their own right to an action for damages. By refusing to claim, Dickerson Bros. could not prevent the election of Wood & Co. If the levy had been upon the whole, the several part owners might be compelled to act in concert. But, when the levy is upon an undivided half, the owner of that half cannot be deprived of his right to claim

by the non-concurrence of the other part owners. Unless Dickerson Bros. denied that the right of possession was an incident of the Sands interest, no right of theirs was affected by the levy, and they could maintain neither a claim nor an action for damages. If they had joined Wood & Co. in the claim, they would have volunteered in a controversy, the result of which could, in no event, have affected their rights. Against them, neither the plaintiff in the writ nor the claimants asserted aught. Unless they denied that possession was an appurtenant of the Sands interest, they could not possibly have been proper parties to this record.

The affidavit of the claimants did not show that the half interest claimed was the half interest levied upon; nor, indeed, that the half interest not claimed was not owned by Sands. There was, therefore, on the face of the affidavit, nothing inconsistent with the sheriff's right to retain possession. Upon such showing, the sheriff might have refused to recognize the claim. It was clearly developed on the trial that the interest levied upon and that claimed, were identical. When the sheriff surrendered the property without the disclosure of this identity in the affidavit, he assumed responsibility for the fact. But the plaintiff in the writ contended that for this omission in the affidavit the claim should be dismissed. The affidavit is not a pleading. It is to be passed upon only by the sheriff, who is not required to be learned in the law. It is a safeguard additional to the bond against frivolous delays of legal process. Its function is discharged when it has been accepted, in company with the more substantial assurance of good faith, the bond.

There was an affidavit describing the property seized and the interest claimed. It was sufficient to perform the part prescribed for an affidavit, in the institution of a trial of the right to the interest levied upon, in the property taken. In Lehman v. Warren, 53 Ala., 539, Chief Justice Brickell expressed the opinion of the court in this language : "The affidavit serves its purpose when, with a proper bond by the claimant, it arrests the action of the officer and introduces the claim into court as a pending suit. Its statements can neither enlarge nor narrow the issue, which the statute requires to be made up, and it is not probably required for any other reason than as an affirmation of the good faith of the claimant in instituting the proceeding."

Our opinion is that the owner of the undivided interest levied upon in property seized, may claim under the statute, and the owner of the other interest, not being a party to the writ, need not be made a party to the proceeding; and, that the affidavit is sufficient to institute the trial of the right of property if accepted by the sheriff, if, in

fact, the interest claimed is the interest levied upon, though their identity be not stated in the affidavit. The rulings of the court below upon the exceptions to the affidavit and the plea in abatement, were in accordance with these views, and the several assignments of error questioning their correctness are not sustained.

The defendants claimed to be the owners of the property in controversy by purchase from Sands, the defendant in the writ, prior to the plaintiff's levy, and alleged that the consideration paid by them was the sum of $800. It was developed upon the trial that Sands was indebted to the claimants, and the consideration was paid by credit upon that demand. To this proof the plaintiff objected, on the ground that the allegation was not substantiated by evidence of payment, otherwise than in money.

This objection was properly overruled. Proof of a set-off cannot be admitted in support of a plea of payment, and a plea of payment in money may not be proved by evidence of a payment in property. Able v. Lee, 6 Tex., 427. But the substance of the defendants' averment was that they had bought the property in controversy from Sands at the price of $800, and that they had paid the consideration agreed upon. It was not stated that it was paid in money, and the averment that the consideration was paid by them, the obligation incurred by them discharged, was sustained by the admitted evidence.

The admission in evidence of the itemized account of Sands' indebtedness to Wood & Co., cannot possibly have prejudiced the plaintiffs. To prove the indebtedness was part of the defendants' proof of purchase of the property, and the account was properly admitted as the basis of the proof of the indebtedness. It was not necessary to aver the items as in a suit for the demand.

It has already been determined that the evidence that the defendants paid Sands for the property in suit, by a credit upon his indebtedness, was properly admitted. To the issue defined by this evidence it it was not error for the court in the charge to apply the law.

Several assignments of error complain of the charge of the court, and the refusal to give special charges upon a theory of the law repudiated by this court, in Ellis v. Valentine, 65 Tex., 532; Lewy & Co. v. Fischl, 65 Tex., 311. The principle of these decisions has been repeatedly affirmed since, and needs no elaboration in this case. The court below in the charge properly interpreted this principle to the jury. The law was stated even more favorably to the plaintiff than the cases cited would warrant.

The court did not err in refusing to charge the jury upon the effect of unexplained possession by the vendor after sale. The witness,

Wood, stated the circumstances under which Sands had the control of the property after the transfer to defendants. This testimony was not contradicted, and if it was true, the possession of Sands was not inconsistent with perfect good faith in the sale by him and purchase by defendants. The charge, if given in the terms requested, would have been misleading. The court informed the jury that the burden of proof was on the defendants.

That portion of the seventh special instruction, asked by plaintiff, informing the jury of the character of evidence to be considered in determining the issue of fraud in the transfer, ought to have been given, and doubtless would have been, if it had not been put inseparably, in the same paragraph, in the long chapter of special charges with other matter not proper to be given. There was no error in refusing the seventh paragraph as a whole, as the whole of it could not lawfully be given.

One of the defendants was permitted, over objection, to testify that his motive in accepting the transfer was to collect the debt due the defendants by Sands. In Miller v. Jannett, 63 Tex., 82, the question as to the intention of the party involved a legal conclusion, and the testimony was held inadmissible. Here, there was no such difficulty. The motive which actuated the witness in a given act was not opinion or legal conclusion, but knowledge as direct as that derived from the senses. Such testimony lacks some of the sanctions of an oath. It would perhaps be impossible to convict the witness of perjury; he cannot be directly contradicted in what he states. But he is allowed to testify and knows the truth, known absolutely only to himself; and authority, almost without dissent, holds such testimony admissible. Abbott's Trial Ev., 739; Bump on Fraud Conv., 574; 1 Wharton on Ev., secs. 482, 508, and cases cited in the notes; Wait on Fraud Conv., sec. 205. That the truth of the testimony cannot be tested in the usual methods, and the witness cannot be detected and disgraced, or convicted and punished, in the usual or in fact, in any way, affect the weight and not the competency of the evidence. The evil can be remedied by the legislature but not by the courts. Whelden v. Wilson, 44 Me., 18; Berkey v. Judd, 22 Minn., 297.

It was proven on the trial that after the defendants' purchase, Sands remained in possession until the plaintiff's writ was levied. This fact was not denied by defendants, but in explantion of it, it was stated that Sands was employed by them to manage the train in a drive to Mobetie. It was the plaintiff's theory, on the contrary, that the sale to the defendants was a mere sham, and that Sands' possession was as real owner under a fraudulent arrangement between him and

defendants; that the sale should only be used to screen the property from Sands' creditors. To support this theory the plaintiff offered to prove that Sands, while in possession after the sale, in the absence of defendants, stated that he had put his property beyond the reach of creditors *until* he could perfect his plans for discharging their demands. This statement was strongly corroborative of the plaintiff's theory. The testimony was excluded, and this action of the court is assigned as error.

The general rule certainly is that the declarations of the grantor, after sale, are not admissible in evidence to impeach the title of the grantee. But, as well established as the rule itself is the exception that such declararations are admissible, when a *prima facie* case of combination or conspiracy has been made by other evidence.

The legal effect of proof of possession, unexplained by the vendor, after sale absolute and immediately operative in terms, has been defined to be a *prima facie* case of fraud. As jealously as the province of the jury has been guarded in our jurisprudence from every invasion by the court, a charge that possession by the vendor after sale, is *prima facie* evidence of fraud, shifting the burden of proof upon the party asserting the validity of the transaction, has been held not to be a charge upon the weight of evidence, and one which it is error to refuse in cases in which the possession, inconsistent with the sale, has not been explained. Gibson *v.* Hill, 21 Tex., 225. However reasonable may have been the explanation given in this case, whether it was sufficient to rebut the *prima facie* case made by the plaintiff, was to be passed upon by the jury. In refutation of that explanation, the plaintiff, by establishing a *prima facie* case of fraud, had laid the predicate for proof of the excluded declarations of Sands.

It is held by numerous and respectable courts and the weight of authority, that the declarations of the vendor in possession after sale, attacked by creditors, are admissible in explanation of the possession, and as part of the *res gestae.* Bump. on Fraud. Conv., 569; Wait on Fraud. Conv., sec. 279, and cases cited in the notes.

The ruling may also be sustained upon the undisputed principle that a *prima facie* case of fraud being made by proof that the vendor remained in possesion, by consent of the vendee, after the vendee was entitled to the possession by the terms of his purchase, the declarations of the vendor while in possession are admissible in evidence against the vendee to prove fraud in the sale. Carrahan *v.* Wood, 2 Swan, 500; Babb *v.* Celmson, 10 S. & R., 419.

The claim by both vendor and vendee that the possession by the

former is as agent or servant of the latter, does not render the testimony inadmissible. Grant *v.* Lewis, 14 Wis. 487.

The case was tried below with a jury, and the testimony as to Sands' declarations to Aiken on the road to Mobetie was improperly excluded. It may be that the result would not have been different if the declarations had been proved, but to maintain this view and affirm the judgment, would deprive the appellant of the right to have the issues of fact tried by a jury. For an error, precisely like this, a new trial was ordered in Carrahan *v.* Wood, *supra.*

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 4, 1886.]